HERRICK, FEINSTEIN LLP
Steven B. Smith
Maxim M.L. Nowak
Hunter Waters
Two Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (Fax)
ssmith@herrick.com
mnowak@herrick.com
hwaters@herrick.com

*Attorneys for Moshe Gold*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Moshe Gold,<br><br>Alleged Debtor. | Chapter 11<br><br>Case No. 24-43681 (NHL) |

## MOTION TO DISMISS INVOLUNTARY PETITION

TO:  THE HONORABLE NANCY HERSHEY LORD
       UNITED STATES BANKRUPTCY JUDGE

Moshe Gold ("Gold"), by and through his undersigned counsel, respectfully submits this motion (the "Motion") for entry of an order, a proposed form of which is annexed hereto as **Exhibit A**, pursuant to section 303 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 1011(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 1013-1(c) of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), (i) dismissing this Involuntary Chapter 11 Case (defined below) and (ii) awarding Gold costs, attorney's fees, and punitive damages.  In support of this Motion, Mountainview LLC files

contemporaneously herewith the Declaration of Motion Moshe Gold (the "Gold Declaration") annexed hereto as **Exhibit B** and respectfully represents, and states as follows:

## PRELIMINARY STATEMENT

1. This Involuntary Chapter 11 Case is the latest in a litany of stall tactics and sham filings by the petitioning creditor Yoel Abraham ("Abraham") intended to harass, embarrass, and burden Gold, the owner of 10 Mountainview LLC ("Mountainview").

2. Bankruptcy Rules are sacrosanct, and petitioning creditors must abide by the rules of notice and service. Failure to serve an involuntary summons on the alleged debtor is fatal. Creditors filing involuntary petitions burdening alleged debtors and expending the Court's time and resources must prosecute the case. A creditor's failure to properly serve the involuntary summons and to prosecute the case gives rise to a powerful inference of bad faith. This Court and the Second Circuit have been clear—a petitioning creditor's actions have consequences and those who seek to use the Bankruptcy Code improperly as a litigation tactic or as a tool to intimidate, harass, and burden will face consequences.

3. Here, Abraham is wasting the Court's resources and is attempting to use this involuntary proceeding, and a sister proceeding before the Court, to further his goals of harassing and burdening Gold as an apparent retaliation for his frustrations with his company's bankruptcy and expected sale of his company's primary real property. Dismissal of this Involuntary Chapter 11 Case is merited. And, attorneys' costs and fees, and punitive damages are warranted to give notice to Abraham and future bad faith petitioners that frivolous filings have consequences.

## JURISDICTION & VENUE

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the Eastern District of New York standing order of reference dated August 28, 1986,

as amended by the order dated December 5, 2012. Gold confirms his consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

6. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory predicates for the relief requested herein are Bankruptcy Code section 303, Bankruptcy Rule 1011(b) and Local Rule 1013-1(c).

## BACKGROUND

A. **The Viewstar Mortgage Loans**

8. Abraham is the former owner of Viewstar LLC ("Viewstar") which owns the real property commonly known as 10 Mountainview Road, Upper Saddle River, New Jersey 07458 (the "Property").

9. Mountainview LLC holds a junior secured lien against the Property pursuant to that certain junior mortgage lien dated April 1, 2020 (the "Junior Mortgage"), which secures a loan from Mountainview LLC to Viewstar in the original principal amount of $4,200,000.00 (the "Junior Mortgage Loan").

10. The Property is also encumbered by a senior mortgage lien dated April 1, 2020 (the "Senior Mortgage") securing a loan (the "Senior Mortgage Loan") from Sterling National Bank ("Sterling") to Viewstar in the restated original principal amount of $12,600,000.00. By virtue of certain allonges and assignments executed by Sterling, RREF IV-D SN Portfolio, LLC (the "Senior Mortgagee") is the holding of the Senior Mortgage.

B.    **The Operating Agreement and the Springing Member**

11.    In connection with the Junior Mortgage Loan, Mountainview LLC and Abraham, the 100% owner of Viewstar at the time of the origination of the Junior Mortgage Loan, entered into an Operating Agreement for Viewstar dated April 1, 2020 (the "Operating Agreement") pursuant to which Abraham was appointed the Managing Member and Mountainview LLC was the "Springing Member." A copy of the Operating Agreement is annexed as Exhibit 1 to the Gold Declaration.

12.    Article 4.1(j) of the Operating Agreement provides that, "upon and after a Springing Member Event, the Springing Member shall have the right to remove and appoint a new Manager and/or remove and replace [Abraham] as the Managing Member of [Viewstar]." Under the Operating Agreement, a "Springing Member Event" includes (i) the default of any mortgage, note, or loan agreement affecting the Property, and (ii) the transfer of membership interests in Viewstar that causes Abraham to no longer remain in control of Viewstar without Mountainview LLC's consent. Operating Agreement Art. 4.1(j)(iii) & (viii).

C.    **The Foreclosure Action**

13.    In July 2022, Viewstar failed to make certain required payments under the Senior Mortgage Loan, and the Senior Mortgagee delivered default notices to Viewstar in connection with Viewstar's default. Thereafter, Abraham, without Mountainview LLC's consent, executed an Assignment and Agreement dated August 2, 2022, purporting to assign Abraham's membership interests in Viewstar to 10 Mountainview Holdings, LLC, an entity owned by Hershel Blumenberg ("Blumenberg") for $10 dollars (the "Assignment"), a copy of the assignment is annexed as Exhibit 2 to the Gold Declaration. 10 Mountainview Holdings, LLC is not affiliated with Mountainview LLC or Gold.

14. On September 12, 2022, Mountainview LLC sent Viewstar a "Notice of Springing Event/Notice of Default," notifying Viewstar that a Springing Member Event had occurred and Mountainview LLC must therefore be admitted as a managing member and manager of Viewstar. Abraham directed his counsel, Kasowitz Benson Torres LLP, to send a response denying that the Springing Member Even had occurred, a copy of the letter is annexed as Exhibit 3 to the Gold Declaration.

15. As a result of Viewstar's defaults, on September 28, 2022, the Senior Mortgagee commenced a foreclosure action (the "Foreclosure Action") in the Superior Court of New Jersey, Bergen County (the "State Court"), to foreclose on the Senior Mortgage. In the Foreclosure Action, the State Court appointed a rent receiver (the "Receiver") to monitor the Property during the pendency of the Foreclosure Action. On March 7, 2024, the State Court awarded the Senior Mortgagee a Final Judgment in Foreclosure and Sale (the "Foreclosure Judgment").

16. On or about June 19, 2024, the Sheriff of Bergen County noticed a foreclosure sale of the Property scheduled for July 26, 2024, at 12:00 p.m. (the "Foreclosure Sale").

D. **The Springing Member Action**

17. On January 27, 2023, Mountainview LLC commenced its own action (the "Springing Member Action") against Viewstar, Abraham, 10 Mountainview Holdings LLC and Blumenberg to, among other things, enforce Mountainview LLC's right under the Operating Agreement to exercise the Springing Member provision to replace Abraham as the Managing Member and remove Abraham as Manager.

18. By decision and order entered in the Springing Member Action on November 29, 2023, the State Court granted in part Mountainview LLC's motion for summary judgment to the extent that Mountainview LLC was entitled to become the Springing Member of Viewstar. By Written Consent in Lieu of a Meeting of the Managing Member of Viewstar LLC dated November

5

29, 2023 (the "Written Consent"): (i) Mountainview LLC replaced Abraham as the Managing Member; and (ii) Abraham was removed as Manager. A copy of the Written Consent is annexed as Exhibit 4 to the Gold Declaration.

19. On August 12, 2024, Viewstar retained Lee E. Buchwald as Restructuring Officer for Viewstar.

E.  **Viewstar Involuntary Chapter 7 Case and Voluntary Chapter 11 Case**

20. On July 26, 2024, just hours before the scheduled Foreclosure Sale of the Property, an individual named Deahn Meir[1], purporting to be a creditor of Viewstar (the "Viewstar Petitioning Creditor"), filed an involuntary chapter 7 petition against Viewstar in the Bankruptcy Court in the District of New Jersey (the "New Jersey Bankruptcy Court"). *In re: Viewstar LLC*, Case No. 24-17410 (RG) (Bankr. D.N.J. 2024), ECF No. 1 (the "Viewstar Involuntary Chapter 7 Case"). At the Foreclosure Sale, when the Sheriff, Abraham, and Gold found out the Foreclosure Sale was stayed due to the Viewstar Involuntary Chapter 7 Case, Abraham made comments about Gold being foolish to think a sale would ever occur. Gold Declaration at 4.

21. Viewstar was never served with the involuntary summons. In fact, other than filing the involuntary chapter 7 petition against Viewstar, the Viewstar Petitioning Creditor filed no other pleadings and took no other action in the Viewstar Involuntary Chapter 7 Case.

22. On August 15, 2024, Viewstar filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Southern District of New York. *In re Viewstar LLC*, Case No. 24-22716(Bankr. S.D.N.Y. 2024), ECF No. 1 (the "Viewstar Voluntary Chapter 11 Case").

---

[1] There is some confusion regarding who the Viewstar Petitioning Creditor is. Specifically, the Viewstar Petitioning Creditor listed their name in a contradictory manner in the involuntary petition—as "Meir Deahn" in some places and as "Deahn Meir" in others. Further, when the senior lender sent a process server to find the Viewstar Petitioning Creditor at the address listed in the involuntary petition, the individual who answered the door at the listed address had no idea who Viewstar Petitioning Creditor. Gold Declaration at 4.

23. Prior to filing the Viewstar Voluntary Chapter 11 Case, Viewstar conferred with counsel for the Senior Mortgagee and Mountainview LLC, both of whom supported a bankruptcy proceeding for Viewstar through the Viewstar Voluntary Chapter 11 Case with venue in the Southern District of New York, rather than through the Viewstar Involuntary Chapter 7 Case.

24. On August 15, 2024, Viewstar filed a *Motion Pursuant to Bankruptcy Rule 1014(b) For Entry of An Order (I) Determining That the Voluntary Chapter 11 Case Filed in the SDNY Should Proceed, and (II) Dismissing the Involuntary Chapter 7 Case. In re: Viewstar LLC*, Case No. 24-17410 (RG)(Bankr. D.N.J. 2024), ECF No. 10 (the "Viewstar Motion to Dismiss").

25. Neither the Viewstar Petitioning Creditor, Abraham nor any other party-in-interest filed an objection to the Viewstar Motion to Dismiss.

26. On September 10, 2024, the New Jersey Bankruptcy Court entered an order granting the Viewstar Motion to Dismiss.

27. On September 24, 2024, Abraham filed a proof of claim in the Viewstar Voluntary Chapter 11 Case.

F.  **Involuntary Chapter Petitions for Gold and Mountainview LLC**

28. On September 4, 2024, Abraham commenced this involuntary chapter 11 against Gold (the "Involuntary Chapter 11 Case").

29. On September 5, 2024, Abraham commenced an involuntary chapter 7 against Mountainview LLC[2], *In re Mountainview LLC*, Case No. 24-43681 (NHL) (Bankr. E.D.N.Y. 2024) (the "Mountainview LLC Involuntary Chapter 7 Case").

30. Abraham has a default judgement against Gold in his individual capacity and Mountainview LLC that was entered by the Supreme Court of the State of New York of Rockland

---

[2] Gold is the owner of Mountainview LLC. Gold Declaration at 1.

on March 8, 2021. Judgement, *Viewstar LLC and Yoel Abraham v. 10 Mountainview LLC and Moshe Gold*, Index No. 33453/2020 (N.Y. Sup. Ct. Rockland Cnty. Mar. 8, 2021), NYSCEF 11.

31. Abraham has failed to serve an involuntary summons in either the Mountainview LLC Involuntary Chapter 7 Case or this Involuntary Chapter 11 Case and has taken no action in either proceeding to prosecute these cases.

32. As of the date of this filing, Abraham's only filing in this case is the involuntary chapter 11 petition that he filed *pro se*.

## ARGUMENT

### I. The Involuntary Petition Must Be Dismissed

#### A. The Petitioning Creditor Must Serve the Involuntary Summons

33. The Bankruptcy and Local Rules, and controlling caselaw, clearly provide that it is the petitioning creditor's burden to serve the involuntary summons within the required seven days after issuance. *In re CNG Foods LLC*, Case No. 16-43278-nhl, 2020 WL 4219679, at *7 (E.D.N.Y. July 13, 2020) (Lord, J.); Fed. R. Bankr. P. 7004(e).

34. Bankruptcy Rule 1010 provides that "[w]hen an involuntary petition is filed, service shall be made on the debtor" in accordance with Bankruptcy Rule 7004(a) or (b). Fed. R. Bankr. P. 1010. Bankruptcy Rule 7004 provides that service of the summons may be made by personal service, or service is authorized by first class mail, and that the summons must be served within 7 days after being issued. Fed. R. Bankr. P. 7004(a), (b), and (e).

#### B. Failure to Timely Serve the Involuntary Summons and Petition is Fatal

35. Failure to timely serve the involuntary summons and petition is fatal. *In re CNG Foods*, 2020 WL 4219679, at *7; *In re Stern*, 268 B.R. 390, 391–92 (Bankr. S.D.N.Y. 2001). Further, the Local Rules permit the Court to "dismiss the case if proof of service of the summons and involuntary petition pursuant to Bankruptcy Rule 7004 is not timely filed." Local Rule 1013-

1(c). Moreover, Bankruptcy Code section 303(j)(3) permits the Court—after notice to all creditors and a hearing—to dismiss a petition "for want of prosecution."[3] 11 U.S.C. § 303(j)(3); *In re CNG Foods*, 2020 WL 4219679, at *7 (holding dismissal was warranted "for want of prosecution" and failure to serve where petitioning creditors failed to timely serve the alleged debtor, 34 days, and then failed to serve a supplemental summons that the judge permitted at an order to show cause hearing); *In re Stern*, 268 B.R. at 391 (noting in its decision to grant sanctions for a bad faith involuntary filing that in a prior involuntary chapter 11 filing, the petition was dismissed for "failure to prosecute").

        C.        The Involuntary Case Should be Dismissed for Want of Prosecution

36. Here, the Court issued the involuntary summons on September 4, 2024, but Abraham: (i) made no effort to serve Gold; (ii) failed to file service of the involuntary summons on the Court's docket; and (iii) failed to prosecute this Involuntary Chapter 11 Case. Abraham is no stranger to bankruptcy procedure however—during this same time period, he prepared and filed a proof of claim in the Viewstar Voluntary Chapter 11 Case, demonstrating his understanding of bankruptcy rules and procedure. Thus, Abraham's failure to serve Gold with the summons by September 11, 2024, is fatal to the case and mandates its dismissal. *In re CNG Foods*, 2020 WL 4219679, at *7; *In re Stern*, 268 B.R. at 391–92.

**II.**        **Gold is Entitled to an Award under Bankruptcy Code Section 303(i)**

        A.        This Court has the Discretion to Grant an Award in Favor of Mountainview LLC

---

[3] Alternatively, along with dismissal being mandated for failure to serve the summons and petition, and for want of prosecution, dismissal is also mandated in the alternative for bad faith pursuant to 11 U.S.C. § 303 and 11 U.S.C. §707(a). *In re Valuex Research, LLC*, Case No. 22-50693, 2023 WL 5941925 (Bankr. D. Conn. Sept. 12, 2023) (dismissing the involuntary chapter 7 petition because it was an inappropriate use of the bankruptcy code used to intimidate the alleged debtor). Abraham's bad faith actions are discussed *infra*.

37. Involuntary bankruptcy is an extreme remedy with severe consequences on the purported debtor, and petitioning creditors should carefully weigh the risks undertaken by filing an involuntary petition. *In re Anmuth Holdings*, 600 B.R. 168, 188 (E.D.N.Y. 2019). Under Bankruptcy Code section 303(i), the Court may grant a judgment against the petitioners of the debtor in favor of the debtor for: (i) costs; or (ii) reasonable attorney's fees. 11 U.S.C. § 303(i)(1)(A)–(B). And the Court may grant judgment against any petitioner that filed the petition in *bad faith* for: (i) any damages proximately cause by such filing; or (ii) punitive damages. 11 U.S.C. § 303(i)(2)(A)–(B).

38. It is within the Court's discretion to grant an award under Bankruptcy Code section 303(i). *In re Anmuth Holdings,* 600 B.R. at 184. A bankruptcy court can grant an award under section 303(i) if three prerequisites are met: (i) the court dismissed the involuntary petition; (ii) the dismissal was other than on consent of the petitioning creditors and the purported debtor; and (iii) the debtor did not waive their right to recovery under the statute. *In re CNG Foods*, 2020 WL 4219679, at *8 (collecting cases).

39. Here, the three elements are not in dispute and an award under both sections 303(i)(1) and (2) is merited. Dismissal of this Involuntary Chapter 11 Case is warranted for a reason other than on consent of the petitioning creditor and debtor—for failure to serve—and the debtor is concurrently seeking dismissal and section 303(i) damages.

    B.    <u>Gold is Entitled to Costs and Attorneys' Fees</u>

40. "When an involuntary petition is dismissed, there is a presumption that costs, and attorney's fees will be awarded to the alleged debtor." *Crest One Spa v. TPG Troy, LLC* (*In re TPG Troy, LLC*), 793 F.3d 228 (2d Cir. 2015) (affirmed the bankruptcy court's conclusion that there was a bona fide dispute requiring dismissal of the involuntary petitions, and the award of

10

attorneys' fees noting nothing in the record supported creditors arguments against an award.) internal quotation and citation omitted).

41. The petitioner bears the burden of justifying the denial of an award of costs and attorney's fees. *In re Annuth Holdings*, 600 B.R. at 186 (holding fees incurred from litigating the entitlement to fees under sections 303(i)(1) and (2) are also recoverable).

42. Abraham cannot offer a justification for a denial of the costs and attorneys' fees incurred in dismissing his frivolous involuntary filing, and thus Gold should be awarded such costs and fees.

C. Gold is Entitled to Punitive Damages

43. "[S]ham involuntary petitions may not be filed in [bankruptcy court] without consequences." *In re Stern*, 268 B.R. at 395. Damages under Bankruptcy Code section 303(i)(2) will be awarded if the alleged debtor meets his burden of establishing the involuntary petition was filed in bad faith. *Lubow Mach. Co., Inc. v. Bayshore Wire Prod. Corp.* (*In re Bayshore Wire Prod. Corp.*), 209 F.3d 100, 105 (2d. Cir. 2000). "The purpose of punitive damages is to punish wrongdoer and deter similar conduct rather than compensate for actual loss." *In re Palmer*, No. 50 8-16-71186-reg, slip op. at 1 (Bankr. E.D.N.Y. June 22, 2017), https://www.nyeb.uscourts.gov/sites/nyeb/files/opinions/Opinion_reg-2017-06-22.pdf; *In re K.P. Enterprise*, 135 B.R. 174, 183 (Bankr. D. Me. 1992).

44. This Circuit established several tests to determine if a petitioning creditor acted in bad faith: (i) the "improper use" test; (ii) the "improper purpose" test; and (iii) the "objective test"; and (iv) a bad faith modeled after the bad faith inquiry standards in Bankruptcy Rule 9011. *In re Bayshore Wire Prod. Corp.*, 209 F.3d at 105–06.

45. The "improper use" test finds bad faith "when a petitioning creditor uses involuntary bankruptcy procedures in an attempt to obtain a disproportionate advantage for itself,

rather than to protect against other creditors obtaining a disproportionate advantage." *In re Bayshore Wire Prod. Corp.,* 209 F.3d at 105–06 (citation omitted).  Whereas the "improper purpose" test finds bad faith exists "if the filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor." *Id.* The "objective test" for bad faith is "based on what a reasonable person would have believed." *Id.*

46. The Bankruptcy Rule 9011 analysis examines the "subjective motivation" and the "objective reasonableness of the petitioning creditor. *In re CNG Foods*, 2020 WL 4219679 at *20.

47. "[M]ost courts determining whether to award damages under §303(i)(2) . . . have adopted a totality of the circumstances test." *In re Anmuth Holdings*, 600 B.R. at 191. (internal quotations and citation omitted).  The "totality of the circumstances" test is "an amalgam of [the] tests set forth in *Bayshore*." *Id.*  Under the test, "[t]he determination of bad faith is a 'fact intensive determination . . . left to the discretion of the bankruptcy court." *Id.* (quoting *In re Forever Green Athletic Fields, Inc*., 804 F.3d 328, 335 (3d Cir. 2015).

48. Courts recognize that findings of bad faith under the multiple tests "often overlap." *In re CNG Foods*, 2020 WL 4219679, at *11 (citation omitted).  Here, based on a totality of the circumstances and the tests articulated in *In re Bayshore*, Abraham's bad faith is apparent.

49. Bankruptcy courts, including this Court, have held that a petitioning creditor's failure to serve an involuntary petition constitutes bad faith. *In re CNG Foods*, 2020 WL 4219679, at *8; *In re Grossinger*, 268 B.R. 386, 390 (Bankr. S.D.N.Y. 2001) (holding that the petitioning creditor acted in bad faith and asserted several "indicia of bad faith," including "failing to serve the alleged debtor" and "failing to take any action to further the involuntary bankruptcy once it has been filled"); *In re Stern*, 268 B.R. at 391 (holding that the petitioning creditors' "failure to serve

12

a copy of the involuntary petition on [the debtor] . . . gives rise to a powerful inference of bad faith.").

50. As discussed above, Abraham made no effort to serve the involuntary petition in either this case or the Mountainview LLC Involuntary Chapter 7 Case nor did Abraham take any action to further either involuntary bankruptcy once the petitions were filed. Abraham's bad faith becomes even more apparent when contrasting his failure to prosecute this Involuntary Chapter 11 Case with his proactive efforts to preserve his claim against Viewstar by filing a proof of claim in the Viewstar Voluntary Chapter 11 Case. Abraham's filing of his proof of claim in the Viewstar Voluntary Chapter 11 Case and failure to take any action to prosecute this Involuntary Chapter 11 Case or the Mountainview LLC Involuntary Chapter 7 Case evidences Abraham's true intent—to abuse the bankruptcy system to harass, embarrass, and burden Mountainview LLC and Gold.

51. Bad faith is found if the petitioning creditor, when filing the petition, "was motivated by ill will, malice, or a desire to embarrass or harass" the purported debtor, *i.e.* an improper purpose." *In re CNG Foods*, 2020 WL 4219679, at *19 (citing *In re Camelot, Inc*., 25 B.R. 861, 868–69 (Bankr. E.D. Tenn. 1982) (holding bad faith existed where "[d]issatisfied with the outcome of the legal proceedings which they had commenced in [state court], [the petitioning creditors] vindictively filed an involuntary petition."). "[C]ourts should be wary of creditors who may find alluring the 'retributive quality' of thrusting a debtor into bankruptcy." *In re Annuth Holdings*, 600 B.R. at 194 (quoting *Forever Green*, 804 F.3d at 355).

52. It is evident here that Abraham, frustrated with the outcome of the Springing Member Action, the Foreclosure Judgement, and Viewstar Involuntary Chapter 7 Case, is attempting to further harass and embarrass Mountainview LLC and Gold by filing a second and third meritless involuntary petition to retaliate for the Foreclosure Sale.

53. Moreover, Abraham cannot credibly argue that filing two involuntary petitions against his company's junior secured creditor, Mountainview LLC, and the creditor's owner, Gold, was what a reasonable person would do. Abraham's two involuntary petitions were filed after the Viewstar Involuntary Chapter 7 Case, that he effectuated to stall the Foreclosure Sale, and Abraham never served either involuntary petition or took any other step to prosecute the involuntary bankruptcies. Nor is this bad faith behavior reasonable considering Abraham is actively participating in the Viewstar Chapter 11 Voluntary Case, while not prosecuting this case.

54. The totality of the circumstances and Abraham's actions constitute bad faith and mandate that punitive damages be awarded pursuant to Bankruptcy Code section 303(i)(2). Here, a plethora of indica of bad faith are present: (i) failing to serve the alleged debtor; (ii) failing to take any action to further the bankruptcy once it had been filed; and (iii) Abraham's history of multiple meritless involuntary petitions demonstrating this proceeding is motivated by ill will, malice, and a desire to harass the alleged debtor.

55. Sham involuntary petitions have consequences, and absent punitive damages Abraham will continue to abuse the bankruptcy courts to further his vindictive behavior.

## NOTICE

56. Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the Eastern District of New York; (ii) petitioning creditor Yoel Abraham (*pro se*); and (iii) all parties entitled to notice pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested herein, Gold respectfully submits that no further notice of this motion is necessary.

## CONCLUSION

57. Abraham has failed to timely meet his burden to serve the involuntary petition on Gold, and therefore the petition must be dismissed.

WHEREFORE, Gold respectfully requests that the Court enter an order: (i) dismissing this Involuntary Chapter 11 Case; (ii) awarding Gold costs and attorney's fees, and punitive damages; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: September 25, 2024
      New York, New York

      Respectfully submitted,

      HERRICK, FEINSTEIN LLP

      By:/s/ DRAFT
         Steven B. Smith
         Maxim M.L. Nowak
         Hunter Waters
         Two Park Avenue
         New York, New York 10016
         Tel: (212) 592-1400
         Fax: (212) 592-1500
         Email: ssmith@herrick.com
                 mnowak@herrick.com
                 hwaters@herrick.com

      *Attorneys for Moshe Gold*