HERRICK, FEINSTEIN LLP
Steven B. Smith
Maxim M.L. Nowak
Hunter Waters
Two Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (Fax)
ssmith@herrick.com
mnowak@herrick.com
hwaters@herrick.com

*Attorneys for Moshe Gold*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Moshe Gold,<br><br>　　　　　Alleged Debtor. | Chapter 11<br><br>Case No. 24-43647 (NHL) |

**MOTION TO DISMISS INVOLUNTARY PETITION**

TO: THE HONORABLE NANCY HERSHEY LORD
　　　UNITED STATES BANKRUPTCY JUDGE

　　　Moshe Gold ("Gold"), by and through his undersigned counsel, respectfully submits this amended motion (the "Amended Motion") for entry of an order, a proposed form of which is annexed hereto as **Exhibit A**, pursuant to section 303 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 1011(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 1013-1(c) of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), (i) dismissing this Involuntary Chapter 11 Case (defined below) and (ii) awarding Gold costs, attorney's fees. In support of this Motion, Gold references the Declaration of Motion Moshe Gold (the "Gold Declaration") attached as Exhibit B to the first

motion to dismiss filed on September 25, 2024 [ECF No. 6 (the "First Motion to Dismiss")] and respectfully represents, and states as follows:

## PRELIMINARY STATEMENT

1. Bankruptcy Rules are sacrosanct, and petitioning creditors must abide by the rules of notice and service. Failure to serve an involuntary summons on the alleged debtor is fatal. Creditors filing involuntary petitions burdening alleged debtors and expending the Court's time and resources must prosecute the case.

2. Here, Yoel Abraham ("Abraham"), and now Israel Farkash ("Farkash") and Asher Blumberg through their purported assignment of Abraham's judgement, are wasting the Court's resources in this Involuntary Chapter 11 Case. Abraham failed to serve the involuntary summons on Gold, never reached out to Gold or his counsel, failed to file an objection to Gold's first Motion to Dismiss (the "First Motion to Dismiss"), and failed to prosecute this case. All while being extremely active with filings in a sister bankruptcy proceeding.

3. Farkash and Asher Blumberg similarly made no effort to prosecute the case. They failed to object to the First Motion to Dismiss despite purportedly being transferred Abraham's claim thirteen days before the First Motion to Dismiss' objection deadline, and their letter requesting the Court adjourn the First Motion to Dismiss hearing came minutes before the Hearing. Nor can Farkash and Asher Blumberg rely on the purported certificate of service they filed—after the objection deadline to the First Motion to Dismiss—that is back dated. The purported certificate of service is allegedly signed September 9, 2024, but contains the First Motion to Dismiss' November 19, 2024 hearing date, a date not known at alleged signing of the purported certificate of service. Moreover, since the First Motion to Dismiss hearing in November 2024, Farkash and Asher Blumenberg have not taken any action to prosecute this case, or to reach out to Gold or his

2

counsel. Dismissal of this Involuntary Chapter 11 Case is merited, and attorneys' costs and fees are warranted under the Bankruptcy Code.

4. For these reasons, the Involuntary Chapter 11 Case should be dismissed.

## JURISDICTION & VENUE

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by the order dated December 5, 2012.  Gold confirms his consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

7. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief requested herein are Bankruptcy Code section 303, Bankruptcy Rule 1011(b) and Local Rule 1013-1(c).

## BACKGROUND

A. **The Viewstar Mortgage Loans**

9. Abraham is the former owner of Viewstar LLC ("Viewstar") which owns the real property commonly known as 10 Mountainview Road, Upper Saddle River, New Jersey 07458 (the "Property").

10. Gold is the owner of 10 Mountainview LLC ("Mountainview LLC") which holds a junior secured lien against the Property pursuant to that certain junior mortgage lien dated April 1, 2020 (the "Junior Mortgage"), which secures a loan from Mountainview LLC to Viewstar in the original principal amount of $4,200,000.00 (the "Junior Mortgage Loan").

11. The Property is also encumbered by a senior mortgage lien dated April 1, 2020 (the "Senior Mortgage") securing a loan (the "Senior Mortgage Loan") from Sterling National Bank ("Sterling") to Viewstar in the restated original principal amount of $12,600,000.00. By virtue of certain allonges and assignments executed by Sterling, RREF IV-D SN Portfolio, LLC (the "Senior Mortgagee") is the holding of the Senior Mortgage.

B. **The Operating Agreement and the Springing Member**

12. In connection with the Junior Mortgage Loan, Mountainview LLC and Abraham, the 100% owner of Viewstar at the time of the origination of the Junior Mortgage Loan, entered into an Operating Agreement for Viewstar dated April 1, 2020 (the "Operating Agreement") pursuant to which Abraham was appointed the Managing Member and Mountainview LLC was the "Springing Member." A copy of the Operating Agreement is annexed as Exhibit 1 to the Gold Declaration.

13. Article 4.1(j) of the Operating Agreement provides that, "upon and after a Springing Member Event, the Springing Member shall have the right to remove and appoint a new Manager and/or remove and replace [Abraham] as the Managing Member of [Viewstar]." Under the Operating Agreement, a "Springing Member Event" includes (i) the default of any mortgage, note, or loan agreement affecting the Property, and (ii) the transfer of membership interests in Viewstar that causes Abraham to no longer remain in control of Viewstar without Mountainview LLC's consent. Operating Agreement Art. 4.1(j)(iii) & (viii).

C. **The Foreclosure Action**

14. In July 2022, Viewstar failed to make certain required payments under the Senior Mortgage Loan, and the Senior Mortgagee delivered default notices to Viewstar in connection with Viewstar's default. Thereafter, Abraham, without Mountainview LLC's consent, executed an Assignment and Agreement dated August 2, 2022, purporting to assign Abraham's membership

interests in Viewstar to 10 Mountainview Holdings, LLC, an entity owned by Hershel Blumenberg for $10 dollars (the "Assignment"), a copy of the assignment is annexed as Exhibit 2 to the Gold Declaration. 10 Mountainview Holdings, LLC is not affiliated with Mountainview LLC or Gold.

15. On September 12, 2022, Mountainview LLC sent Viewstar a "Notice of Springing Event/Notice of Default," notifying Viewstar that a Springing Member Event had occurred and Mountainview LLC must therefore be admitted as a managing member and manager of Viewstar. Abraham directed his counsel, Kasowitz Benson Torres LLP, to send a response denying that the Springing Member Even had occurred, a copy of the letter is annexed as Exhibit 3 to the Gold Declaration.

16. As a result of Viewstar's defaults, on September 28, 2022, the Senior Mortgagee commenced a foreclosure action (the "Foreclosure Action") in the Superior Court of New Jersey, Bergen County (the "State Court"), to foreclose on the Senior Mortgage. In the Foreclosure Action, the State Court appointed a rent receiver (the "Receiver") to monitor the Property during the pendency of the Foreclosure Action. On March 7, 2024, the State Court awarded the Senior Mortgagee a Final Judgment in Foreclosure and Sale (the "Foreclosure Judgment").

17. On or about June 19, 2024, the Sheriff of Bergen County noticed a foreclosure sale of the Property scheduled for July 26, 2024, at 12:00 p.m. (the "Foreclosure Sale").

D. **The Springing Member Action**

18. On January 27, 2023, Mountainview LLC commenced its own action (the "Springing Member Action") against Viewstar, Abraham, 10 Mountainview Holdings LLC and Blumenberg to, among other things, enforce Mountainview LLC's right under the Operating Agreement to exercise the Springing Member provision to replace Abraham as the Managing Member and remove Abraham as Manager.

5

19. By decision and order entered in the Springing Member Action on November 29, 2023, the State Court granted in part Mountainview LLC's motion for summary judgment to the extent that Mountainview LLC was entitled to become the Springing Member of Viewstar. By Written Consent in Lieu of a Meeting of the Managing Member of Viewstar LLC dated November 29, 2023 (the "Written Consent"): (i) Mountainview LLC replaced Abraham as the Managing Member; and (ii) Abraham was removed as Manager. A copy of the Written Consent is annexed as Exhibit 4 to the Gold Declaration.

20. On August 12, 2024, Viewstar retained Lee E. Buchwald as Restructuring Officer for Viewstar.

E. **Viewstar Involuntary Chapter 7 Case and Voluntary Chapter 11 Case**

21. On July 26, 2024, just hours before the scheduled Foreclosure Sale of the Property, an individual named Deahn Meir[1], purporting to be a creditor of Viewstar (the "Viewstar Petitioning Creditor"), filed an involuntary chapter 7 petition against Viewstar in the Bankruptcy Court in the District of New Jersey (the "New Jersey Bankruptcy Court"). *In re: Viewstar LLC*, Case No. 24-17410 (RG) (Bankr. D.N.J. 2024), ECF No. 1 (the "Viewstar Involuntary Chapter 7 Case").

22. Viewstar was never served with the involuntary summons. In fact, other than filing the involuntary chapter 7 petition against Viewstar, the Viewstar Petitioning Creditor filed no other pleadings and took no other action in the Viewstar Involuntary Chapter 7 Case.

---

[1] There is some confusion regarding who the Viewstar Petitioning Creditor is. Specifically, the Viewstar Petitioning Creditor listed their name in a contradictory manner in the involuntary petition—as "Meir Deahn" in some places and as "Deahn Meir" in others. Further, when the senior lender sent a process server to find the Viewstar Petitioning Creditor at the address listed in the involuntary petition, the individual who answered the door at the listed address had no idea who Viewstar Petitioning Creditor. Gold Declaration at 4.

23. On August 15, 2024, Viewstar filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Southern District of New York. *In re Viewstar LLC*, Case No. 24-22716(Bankr. S.D.N.Y. 2024), ECF No. 1 (the "Viewstar Voluntary Chapter 11 Case").

24. Prior to filing the Viewstar Voluntary Chapter 11 Case, Viewstar conferred with counsel for the Senior Mortgagee and Mountainview LLC, both of whom supported a bankruptcy proceeding for Viewstar through the Viewstar Voluntary Chapter 11 Case with venue in the Southern District of New York, rather than through the Viewstar Involuntary Chapter 7 Case.

25. On August 15, 2024, Viewstar filed a *Motion Pursuant to Bankruptcy Rule 1014(b) For Entry of An Order (I) Determining That the Voluntary Chapter 11 Case Filed in the SDNY Should Proceed, and (II) Dismissing the Involuntary Chapter 7 Case. In re: Viewstar LLC*, Case No. 24-17410 (RG)(Bankr. D.N.J. 2024), ECF No. 10 (the "Viewstar Motion to Dismiss").

26. Neither the Viewstar Petitioning Creditor, Abraham nor any other party-in-interest filed an objection to the Viewstar Motion to Dismiss.

27. On September 10, 2024, the New Jersey Bankruptcy Court entered an order granting the Viewstar Motion to Dismiss.

28. On September 24, 2024, Abraham filed a proof of claim in the Viewstar Voluntary Chapter 11 Case.

F. **Involuntary Chapter Petitions for Gold and Mountainview LLC**

29. On September 4, 2024, Abraham commenced this involuntary chapter 11 case against Gold (the "Involuntary Chapter 11 Case").

30. On September 5, 2024, Abraham commenced an involuntary chapter 7 against Mountainview LLC[2], *In re Mountainview LLC*, Case No. 24-43681 (NHL) (Bankr. E.D.N.Y. 2024) (the "Mountainview LLC Involuntary Chapter 7 Case").

31. Abraham has a default judgement against Gold in his individual capacity and Mountainview LLC that was entered by the Supreme Court of the State of New York of Rockland on March 8, 2021. Judgement, *Viewstar LLC and Yoel Abraham v. 10 Mountainview LLC and Moshe Gold*, Index No. 33453/2020 (N.Y. Sup. Ct. Rockland Cnty. Mar. 8, 2021), NYSCEF 11.

32. Abraham failed to serve an involuntary summons in either the Mountainview LLC Involuntary Chapter 7 Case or this Involuntary Chapter 11 Case.

33. Gold filed the First Motion to Dismiss on September 25, 2024 [ECF No. 6] after Abraham failed to serve the involuntary summons and served it on Abraham. [ECF No. 8]. The First Motion to Dismiss hearing was scheduled for November 19, 2024 at 10:30 a.m. (the "Hearing") with any objections to be filed on November 12, 2024. [ECF No. 7].

34. Abraham did not interpose an objection to the First Motion to Dismiss by the November 12 objection deadline. In contrast to his inaction in this Involuntary Chapter 11 Case, Abraham was active in the Viewstar Voluntary Chapter 11 Case during this same period where he: (i) filed an objection to the retention of Debtor's counsel, *In re Viewstar LLC*, Case No. 24-22716 (Bankr. S.D.N.Y. 2024), ECF No. 23 (*Objection to the Application of Paul Rubin Esq. to represent the Debtor*); (ii) filed a request for an extension to comply with a Rule 2004 discovery order, *In re Viewstar LLC*, Case No. 24-22716 (Bankr. S.D.N.Y. 2024), ECF No. 31(*Letter to Motion to Extend Time to Compel Ex-parte Order*); and (iii) filed a surreply to his objection to the

---

[2] Gold is the owner of Mountainview LLC. Gold Declaration at 1.

8

retention of Debtor's counsel, *In re Viewstar LLC*, Case No. 24-22716 (Bankr. S.D.N.Y. 2024), ECF No. 37 (*Response/Reply to Mr. Paul Rubin, Esq*).

35. At no time after Gold filed the First Motion to Dismiss did Abraham contact Gold or his counsel to discuss the Involuntary Chapter 11 Case or anything related thereto.

36. Minutes before the Hearing, Farkash filed an untimely letter requesting to adjourn the hearing contending that Abraham transferred his interest in the judgment against Gold to Farkash and Asher Blumenberg on October 31, thirteen days before the First Motion to Dismiss' objection deadline [ECF No. 10 ("Farkash Letter")][3].

37. At the Hearing, Farkash informed the Court that he had just filed a certificate of service in the case [ECF No. 11 (the "Purported Certificate of Service")], which alleged that David Halpern sent the involuntary summons to Gold on September 9, 2024. The Purported Certificate of Service however was filed with the wrong court in the case caption and appears to be back dated. Specifically, the signature byline of Mr. Halpern is dated September 9, 2024, but the document contains the Hearing date, November 19, 2024, in the caption. The Hearing date was not known to Mr. Halpern when the Purported Certificate of Service was signed.

38. The Court continued the First Motion to Dismiss to January 21, 2025 at 3 p.m. to determine the validity of Farkash's Purported Certificate of Service. [ECF No. 12 (Hearing Transcript) (Tr. 12:20-13:13) (Nov. 19, 2024). The Court also heard and dismissed the Mountainview LLC Involuntary Chapter 7 Case for failure to prosecute. *Id.*

---

[3] Although Farkash filed the Farkash Letter seeking an adjournment, at the time of this filing, Farkash still has not filed a notice of appearance.

9

39.     As of this filing, neither Abraham nor Farkash nor any their respective representatives have taken any action in the Involuntary Chapter 11 Case or otherwise contacted Gold or his attorneys to discuss the case.

## ARGUMENT

### I.    The Involuntary Petition Must Be Dismissed

#### A.    The Petitioning Creditor Must Serve the Involuntary Summons

40.     The Bankruptcy and Local Rules, and controlling caselaw, clearly provide that it is the petitioning creditor's burden to serve the involuntary summons within the required seven days after issuance. *In re CNG Foods LLC*, Case No. 16-43278-nhl, 2020 WL 4219679, at *7 (E.D.N.Y. July 13, 2020) (Lord, J.); Fed. R. Bankr. P. 7004(e).

41.     Bankruptcy Rule 1010 provides that "[w]hen an involuntary petition is filed, service shall be made on the debtor" in accordance with Bankruptcy Rule 7004(a) or (b). Fed. R. Bankr. P. 1010. Bankruptcy Rule 7004 provides that service of the summons may be made by personal service, or service is authorized by first class mail, and that the summons must be served within 7 days after being issued. Fed. R. Bankr. P. 7004(a), (b), and (e).

#### B.    Failure to Timely Serve the Involuntary Summons and Petition is Fatal

42.     Failure to timely serve the involuntary summons and petition is fatal. *In re CNG Foods*, 2020 WL 4219679, at *7; *In re Stern*, 268 B.R. 390, 391–92 (Bankr. S.D.N.Y. 2001). Further, the Local Rules permit the Court to "dismiss the case if proof of service of the summons and involuntary petition pursuant to Bankruptcy Rule 7004 is not timely filed." Local Rule 1013-1(c). Moreover, Bankruptcy Code section 303(j)(3) permits the Court—after notice to all creditors and a hearing—to dismiss a petition "for want of prosecution."[4] 11 U.S.C. § 303(j)(3); *In re CNG*

---

[4] Alternatively, along with dismissal being mandated for failure to serve the summons and petition, and for want of prosecution, dismissal is also mandated in the alternative for bad faith pursuant to 11 U.S.C. § 303 and 11 U.S.C.

*Foods*, 2020 WL 4219679, at *7 (holding dismissal was warranted "for want of prosecution" and failure to serve where petitioning creditors failed to timely serve the alleged debtor, 34 days, and then failed to serve a supplemental summons that the judge permitted at an order to show cause hearing); *In re Stern*, 268 B.R. at 391 (noting in its decision to grant sanctions for a bad faith involuntary filing that in a prior involuntary chapter 11 filing, the petition was dismissed for "failure to prosecute"). At the Hearing, Farkash's Purported Certificate of Service, is also unavailing, it comes nearly three months after service was allegedly made and is back dated, raising serious concerns about the Purported Certificate of Services credibility.

   C. <u>The Involuntary Chapter 11 Case Should be Dismissed for Want of Prosecution</u>

   43. Here, the Court issued the involuntary summons on September 4, 2024, but Abraham: (i) made no effort to serve Gold; (ii) failed to file service of the involuntary summons on the Court's docket; and (iii) failed to prosecute this Involuntary Chapter 11 Case. Abraham is no stranger to bankruptcy procedure however—during this same time period, he: (i) prepared and filed a proof of claim in the Viewstar Voluntary Chapter 11 Case; (ii) he objected to the retention of debtor's counsel in the Viewstar Voluntary Chapter 11 Case; (iii)he filed a surreply to his objection; and (iv) he filed a request for an extension of Rule 2004 discovery, demonstrating his understanding of bankruptcy rules and procedure. Thus, Abraham's failure to serve Gold with the summons by September 11, 2024, is fatal to the case and mandates its dismissal. *In re CNG Foods*, 2020 WL 4219679, at *7; *In re Stern*, 268 B.R. at 391–92.

   44. Moreover, Farkash and Asher Blumenberg failed to take any action or contact Mr. Gold and his counsel after his alleged assignment of Abraham's interests on October 31, 2024,

---

§707(a). *In re Valuex Research, LLC*, Case No. 22-50693, 2023 WL 5941925 (Bankr. D. Conn. Sept. 12, 2023) (dismissing the involuntary chapter 7 petition because it was an inappropriate use of the bankruptcy code used to intimidate the alleged debtor). Abraham's bad faith actions are discussed *infra*.

thirteen days before the First Motion to Dismiss' objections deadline. It was not until minutes before the hearing, as the parties were waiting to be called, that Farkash made any filings on the docket. Further, in the time since the first hearing and this filing, Farkash has taken no action in the Involuntary Chapter 11 Case or contacted Gold or his counsel. Similarly, the Involuntary Chapter 11 Case should be dismissed for Farkash's and Asher Blumenberg's want of prosecution.

## II.     Gold is Entitled to an Award under Bankruptcy Code Section 303(i)

### A.     This Court has the Discretion to Grant an Award in Favor of Gold

45.     Involuntary bankruptcy is an extreme remedy with severe consequences on the purported debtor, and petitioning creditors should carefully weigh the risks undertaken by filing an involuntary petition. *In re Anmuth Holdings*, 600 B.R. 168, 188 (E.D.N.Y. 2019). Under Bankruptcy Code section 303(i), the Court may grant a judgment against the petitioners of the debtor in favor of the debtor for: (i) costs; or (ii) reasonable attorneys' fees. 11 U.S.C. § 303(i)(1)(A)–(B).

46.     It is within the Court's discretion to grant an award under Bankruptcy Code section 303(i). *In re Anmuth Holdings,* 600 B.R. at 184. A bankruptcy court can grant an award under section 303(i) if three prerequisites are met: (i) the court dismissed the involuntary petition; (ii) the dismissal was other than on consent of the petitioning creditors and the purported debtor; and (iii) the debtor did not waive their right to recovery under the statute. *In re CNG Foods*, 2020 WL 4219679, at *8 (collecting cases).

47.     Here, the three elements are not in dispute and an award under both sections 303(i)(1) is merited. Dismissal of this Involuntary Chapter 11 Case is warranted for a reason other than on consent of the petitioning creditor and debtor—for failure to serve—and the debtor is concurrently seeking dismissal and section 303(i) attorneys' fees.

### B.      Gold is Entitled to Costs and Attorneys' Fees

48.     "When an involuntary petition is dismissed, there is a presumption that costs, and attorney's fees will be awarded to the alleged debtor." *Crest One Spa v. TPG Troy, LLC* (*In re TPG Troy, LLC*), 793 F.3d 228 (2d Cir. 2015) (affirmed the bankruptcy court's conclusion that there was a bona fide dispute requiring dismissal of the involuntary petitions, and the award of attorneys' fees noting nothing in the record supported creditors arguments against an award.) internal quotation and citation omitted).

49.     The petitioner bears the burden of justifying the denial of an award of costs and attorney's fees. *In re Annuth Holdings*, 600 B.R. at 186 (holding fees incurred from litigating the entitlement to fees under sections 303(i)(1) and (2) are also recoverable).

50.     Abraham or Farakash cannot offer a justification for a denial of the costs and attorneys' fees incurred in dismissing his frivolous involuntary filing, and thus Gold should be awarded such costs and fees.

## NOTICE

51.     Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the Eastern District of New York; (ii) petitioning creditor Yoel Abraham (*pro se*); and (iii) all parties entitled to notice pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested herein, Gold respectfully submits that no further notice of this motion is necessary.

## CONCLUSION

52.     Abraham has failed to timely meet his burden to serve the involuntary petition on Gold, and therefore the petition must be dismissed.

WHEREFORE, Gold respectfully requests that the Court enter an order: (i) dismissing this Involuntary Chapter 11 Case; (ii) awarding Gold costs and attorney's fees; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: January 7, 2025
       New York, New York

                            Respectfully submitted,

                            HERRICK, FEINSTEIN LLP

                            By: /s/ *Steven B. Smith*
                                Steven B. Smith
                                Maxim M.L. Nowak
                                Hunter Waters
                                Two Park Avenue
                                New York, New York 10016
                                Tel: (212) 592-1400
                                Fax: (212) 592-1500
                                Email: ssmith@herrick.com
                                          mnowak@herrick.com
                                          hwaters@herrick.com

                            *Attorneys for Moshe Gold*